# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Electronically FILED by Superior Court of California, County of Riverside on 07/12/2024 07:36 PM
Case Number CVRI2404044 0000098767662 - Jason B, Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

TRISTAR PRODUCTS, INC., a Florida Corporation; and DOES 1
through 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

VIRGINIA MARIE TORRES, an individual;
KRISTEN IRENE KUHN, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Riverside Historic Courthouse<br><br>4050 Main Street<br>Riverside, CA 92501 | CASE NUMBER: *(Número del Caso):*<br>**CVRI 2404044** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kathy Lerner, Esq.; 16501 Ventura Blvd., Suite 400, Encino CA 91436; Tel: (818) 650-2606

| DATE: 07/12/2024 *(Fecha)* | Clerk, by *(Secretario)* _____ | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*    J.DeRosier

[SEAL]

GC68150(g)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* TRISTAR PRODUCTS, INC., a Florida Corporation

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Riverside on 07/12/2024 07:36 PM
Case Number CVRI2404044 0000098767660 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

KATHY LERNER, ESQ. (SBN 285131)
**KL LAW FIRM P.C.**
16501 Ventura Blvd., Suite 400
Encino, California 91436
Telephone: (818) 650-2606
Fax: (818) 626-5503
Kathy@kllawfirmpc.com

Attorneys for Plaintiffs,
VIRGINIA MARIE TORRES and KRISTEN IRENE KUHN

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

## RIVERSIDE HISTORIC COURTHOUSE

| | |
|---|---|
| VIRGINIA MARIE TORRES, an individual; KRISTEN IRENE KUHN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> TRISTAR PRODUCTS, INC., a Florida Corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: CVRI2404044 <br><br> **PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES:** <br><br> 1. **NEGLIGENCE** <br> 2. **STRICT PRODUCTS LIABILITY** <br> 3. **STRICT LIABILITY – DESIGN DEFECT** <br> 4. **STRICT LIABILITY – FAILURE TO WARN** <br> 5. **BREACH OF EXPRESS WARRANTY** <br> 6. **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY** <br> 7. **BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR USE** <br><br> **DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs, VIRGINIA MARIE TORRES and KRISTEN IRENE KUHN, assert the following causes of action against Defendants, TRISTAR PRODUCTS, INC, a Florida Corporation, and DOES 1 through 50, inclusive, and alleges as follows:

---

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

## PARTIES AND VENUE

1.      At all times material hereto, Plaintiff VIRGINIA MARIE TORRES (hereinafter "Torres" or "Plaintiff Torres") is and was a resident of the City of Moreno Valley, County of Riverside, State of California.

2.      At all times material hereto, Plaintiff KRISTEN IRENE KUHN (hereinafter "Kuhn" or "Plaintiff Kuhn") is and was a resident of the City of Perris, County of Riverside, State of California.

3.      Plaintiff is informed and believes, and thereon alleges that, at all times material hereto, Defendant TRISTAR PRODUCTS, INC. (hereinafter "Defendant Tristar" or "Defendant") is and was a Floria Profit Corporation authorized to do and doing business in the State of California. At all times relevant, Defendant Tristar designs, manufacturers, markets, imports, distributes, promotes and sells a variety of consumer products including pressure cookers and more specifically, the "Power Pressure Cooker XL," model number PPC790 (the "Pressure Cooker") which caused Plaintiffs' injuries and damages.

4.      Venue and jurisdiction are appropriate in Riverside County, California, as the events giving rise to this Complaint occurred on July 14, 2022 and or around 23463 Lawless Road, in the City of Moreno Valley, County of Riverside, State of California 92557.

5.      Plaintiffs are currently unaware of the true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these Defendants by those fictitious names. Plaintiffs will seek leave of court to amend their Complaint to allege said Defendants' true names and capacities when that information becomes known to them.

6.      Plaintiffs are informed and believe, and hereupon allege that each of these fictitiously named DOE Defendants are legally responsible and liable in some manner for the incident, injuries and damages set forth herein, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, reckless, and/or wrongful misconduct, in creating and/or otherwise causing the incidents, conditions and circumstances hereinafter set forth, or by reason of

2

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged.

7.     Plaintiffs are further informed, believe and hereupon alleges that, at all relevant times, mentioned herein, the Defendants (including those sued as DOES 1 - 25), and each of them, were the agent, servant, and/or employee of each of the remaining Defendants, and that in doing the things hereinafter alleged, was acting within the scope of such agency, service, and/or employment and with the permission and consent of other co-Defendants, and that each Defendant and its officers, directors, and/or managing agents directly or indirectly conducted, authorized, ratified, and/or approved the acts of the other Defendants, and each of them.

8.     In addition, at all times herein relevant, each Defendant, whether named herein or designated as a DOES 1 - 25, was a principal, master, employer, and joint venturer of every other Defendant, and every Defendant was acting within the scope of said agency authority, employment and joint venture.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.     Defendant Tristar is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and/or selling the Pressure Cooker at issue in this litigation.

10.     Defendant Tristar also sells other pressure cooker devices under the "Power Pressure Cooker" line of pressure cookers, including the "PPC780" (eight quart), and "PPC770" (six quart), and each model is substantially similar in design and function.

11.     The Pressure Cooker, and pressure cookers generally, are electric appliances designed and sold for efficient food preparation using pressure inside the unit to cook the food therein.

12.     On information and belief, Defendant Tristar directly participated in, directed and/or supervised the testing of its pressure cookers, including the Pressure Cooker, for "reliability" and "validation" as well as pressurization and depressurization, locked testing, valve clog tests, drop tests, functional and cycle testing. Defendant Tristar, at all times relevant herein, was responsible for

3

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

the design and any changes to its pressure cookers, including the Pressure Cooker.

13. According to its website, Defendant Tristar is "industry-recognized as the premier direct-to-consumer market leader worldwide. Tristar has exceeded over *one billion dollars in retail sales* and is an Inc. 5000 company. Tristar's success relies on its proven track record of building brands and driving category growth, leveraging international and domestic distribution channels, media power in more than 100 countries, and the best team in the industry. Tristar has established domestic and international market dominance using a 360-degree approach that includes online, social media, TV media, and retail distribution in major retailers around the world, including Walmart; Sam's Club; Bed, Bath & Beyond; Amazon; QVC; Target; and many more."

14. Defendant Tristar aggressively warrants, markets, advertises and sells its pressure cookers, including the Pressure Cooker," as "state of the art, one-touch answer to old-model units" that "make[s] life easier and stress-free." According to its website, Defendant Tristar claims: " 'We introduced the Power Pressure Cooker XL to replace the finicky pressure cookers of our grandmothers that required a lot of effort to use properly,' says Norah Alberto, Director of Global Brand Communications. 'The design engineers made sure to include only the most consumer-friendly parts and functions, like a one-touch digital control panel. The result is a completely re-designed pressure cooker— from top to bottom. It's perfect for hearty comfort food in the fall and winter months. Precise temperature control means everything you make in the Power Pressure Cooker XL is evenly cooked and extra rich with flavor.' "

15. Defendant Tristar represents to the public that "while traditional pressure cookers require manual temperature control, the Power Pressure Cooker XL heats to precise temperatures with digital, pre-set smart buttons. When food has finished cooking, the unit automatically goes into the Keep Warm mode."

16. Defendant Tristar further advertises that its pressure cookers, including the Pressure Cooker, are "[d]esigned as the premium quality, contemporary replacement for the pressure cookers of the past, it quickly became the must-have kitchen product among busy families."

4

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

17.    Defendant Tristar represents and warrants that it "is recognized as the pioneer of industry ideas in the direct response marketing business. Dedication to *high standards of quality manufacturing* makes Tristar the *premiere* "As Seen on TV" market leader worldwide. Tristar creates well-established brands, proven international and domestic distribution channels, media power in over 100 countries, and quality manufacturing that attracts celebrity endorsements. Tristar Products, Inc. has exceeded over a *billion dollars* in retail sales. Tristar Products, Inc. is an Inc. 5000 company."

18.    To further propagate its message, Defendant Tristar has, and continues to utilize numerous media outlets including, but not limited to, television infomercials, social media websites such as YouTube, third-party retailers, and professional chef endorsements.

19.    Defendant Tristar's pressure cookers, including the Pressure Cooker, are designed such that the unit cannot pressurize until the lid is secured in a "locked position," thereby allowing the float valve to rise and secure the pressure inside the unit. Moreover, the float valve, when engaged, is designed to interact with the strike plate and locking pin, thereby preventing the lid from being removed under pressure. On information and belief, Defendants' agents and/or representatives have admitted that the Pressure Cooker is defective if it can be pressurized without the lid being secured in locked position or if the lid of the unit can be removed under pressure.

20.    The only way a user or consumer can know that Defendant Tristar's pressure cookers, including the Pressure Cooker, has depressurized and thus the lid safe to be removed, is to wait until steam ceases to be seen exiting the unit's manual release valve which, is designed to be incapable of clogging. Defendant Tristar's Pressure Cooker is defective if the manual release valve is to become clogged since Defendant's Pressure Cooker is designed to prevent clogging of the release valve.

21.    According to Defendant Tristar's advertisements, promotions, and user's manual, its Pressure Cooker is the safest and easiest to use Pressure Cooker on the market because it was designed to include a number of "Built-In Safety Features," including, but not limited to:

a.    "Lid Safety Device" that "prevents pressure build-up if the lid is not closed" and

5

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

"prevents lid from opening until all pressure is released,"

b.   "Pressure and Temperature Sensor Controls: Maintain even heat and pressure by automatically activating or deactivating the power supply;"

c.   " 'Back-up' Safety Release Valve: Should the Temperature/Pressure Sensor device malfunction, causing pressure to build beyond maximum setting, the "Back-Up" will automatically "kick in" and release the built up pressure;"

d.   "Clog Resistant' Feature:" that "prevents food from blocking the steam release port;"

e.   " 'Spring Loaded' Safety Pressure Release:" that in the event of failure of all other safety features, "will automatically lower the Inner Pot, causing it to separate automatically from the Rubber Gasket" to "enable the steam and pressure to automatically escape around the Lid, avoiding a dangerous condition;" and

f.   "Temperature "Cut-Off" Device: Should the unit malfunction and cause the internal temperature to rise beyond the "Safe" limit, this device will cut-off the power supply and will not automatically reset."

23.   Additionally, as stated in the "Frequently Asked Questions" section of the owner's manual for the Pressure Cooker, the question "WHY WOULD THE LID COME OFF WHEN IT SHOULDN'T?" is answered as follows: "*It should only come off if there was no pressure inside*." (Emphasis added).

24.   Defendant's Pressure Cooker also includes a "CAUTION" label affixed to the unit itself. The label includes a diagram/model of a "Pressure Valve" with instructions regarding how to manually turn it to "seal" (pressurize) and "vent" (depressurize) the unit. The label then states, "Once the Floating Valve has dropped, the Lid may be removed." However, neither the label nor the owner's manual accompanying the Pressure Cooker include a diagram, description, or any other means of identifying the "Floating Valve," which is an internal component not readily apparent to

6

ordinary users and consumers.

25.    Prior to July 14, 2022, Plaintiff Torres had viewed advertisements related to the Pressure Cooker, in which Defendant Tristar expressly warranted and represented that its Pressure Cooker was safe and easy to use and relied on said representations and assertions. Plaintiff Torres was also aware the Pressure Cookers "Built-In Safety Features."

26.    Prior to July 14, 2022, Plaintiff Torres had operated the Pressure Cooker, including preparing food items to be cooked, placing them in the Pressure Cooker, adding liquid, securing the lid, turning the pressure release valve to release the pressure at the conclusion of the cook cycle, and, thereafter, removing the lid; all without incident.

27.    On July 14, 2022, Plaintiff Torres prepared a soup in the Pressure Cooker, as directed and per the instructions for the product, while at her home in the City of Moreno Valley, County of Riverside County, State of California. Plaintiff Kuhn, a friend of Plaintiff Torres' daughter, was present with Plaintiff Torres in her home at the time. Plaintiffs understood the general operation of the Pressure Cooker and specifically relied on Defendant's representations and express warranties that the Pressure Cooker would not pressurize without its lid being closed and that the lid could only come off if there was no pressure inside. That is, Plaintiff Torres placed the proper amount of soup in the Pressure Cooker, placed the lid on the unit and turned it until she heard a "click" indicating it was locked, and then pressed the unit's button to start the cooking (pressurization) process. At the conclusion of the cook cycle, the Pressure Cooker indicated that the food was cooked. Plaintiff Torres then turned the pressure release valve to release the pressure, as per Defendant's instructions on the Pressure Cooker, at which time the unit emitted a "hissing" or "whistling" sound and/or steam indicating the pressure was being released. Plaintiff Torres allowed the Pressure Cooker to depressurize fully, and after the hissing/whistling stopped and there were no signs of steam being emitted from the unit, Plaintiff Torres still waited for some additional time to ensure that the Pressure Cooker was fully done. Thereafter, she unplugged the Pressure Cooker and went to attend to her son, allowing the soup to remain therein.

7

28. When Plaintiff Torres returned to the kitchen, she called Plaintiff Kuhn into the kitchen for dinner. Plaintiff Torres then went to the Pressure Cooker, again checked the nozzle to ensure that no sounds or steam were emitting therefrom and after seeing none, she just barely touched the lid of the Pressure Cooker in attempts to turn and remove it, but before she was able to even turn or remove it, the lid suddenly and without warning exploded from the unit, launched at the Plaintiffs, shot up and stuck the at the ceiling and caused the heated contents of the Pressure Cooker (food items and liquid) to explode violently onto Plaintiffs' chests, arms, and legs, resulting in severe, painful burns which necessitated medical treatment.

29. As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiffs used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon Plaintiffs' simple touching of the lid of the Pressure Cooker, thereby causing Plaintiffs to suffer from permanent scarring and skin discoloration, along with numbness, pain and other significant bodily injuries, mental anguish, diminished enjoyment of life and other damages.

30. Plaintiffs used the Pressure Cooker for its intended purpose of preparing meals and did so in a manner prescribed in Defendant Tristar's instruction and in a manner that was reasonable and foreseeable by Defendants.

31. However, the Pressure Cooker was defectively designed and manufactured by Defendant Tristar in that it failed to properly function as to prevent the lid from being removed (and from exploding as had occurred in this case) while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiffs and similar consumers in danger while using Defendant's Pressure Cooker.

32. Defendant Tristar's Pressure Cookers possess defects that make them unreasonably

8

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

dangerous for their intended use by consumers because the lid can explode from the unit or can be rotated and opened while the unit remains pressurized (contrary to Defendant's representations and assertions about the product).

33.    Further, Defendant Tristar's representations about "safety" are not just misleading, but blatantly false and wrong, and thus place innocent consumers like Plaintiffs directly in harm's way.

34.    On information and belief, economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from exploding in the manner that it did and from being opened while pressurized.

35.    Unbeknownst to the Plaintiffs at the time of their use of Defendant Tristar's Pressure Cooker, Defendant had previously received (and was contemporaneously receiving) numerous reports of serious personal injury (chiefly serious burns) and property damage resulting from similar incidents of Defendant's Pressure Cooker lids exploding from the units such as had occurred to the Plaintiffs. Not only have numerous lawsuits been filed in District Courts throughout the United States regarding such failures of Defendant's Pressure Cooker, and similar models, but the same is true is various state court nationwide. The Consumer Products Safety Commission has also received several reports of other similar incidents stemming from the failure of Defendant Tristar's pressure cookers, including the Pressure Cooker model as issue in this action.

36.    Despite its knowledge of such defects with its Pressure Cooker, Defendant Tristar failed to recall, halt, hold, or otherwise alter the sales of its Pressure Cookers to consumers and instead, continued to push and produce more units in the interest of profit and with the upmost disregard for the safety of the public, failing to even warn its consumers of the known dangers with its product.

37.    Defendant Tristar knew or should have known that its Pressure Cookers possessed defects that posed a serious safety risk to Plaintiffs and the public. Nevertheless, Defendant Tristar ignored, and continues to ignore and/or conceal its knowledge of the Pressure Cookers' defects from

9

the general public in order to generate a substantial profit from the sale of its units instead, demonstrating a callous, reckless, wonton, willful, depraved indifference and disregard to the health, safety and welfare of Plaintiffs and consumers like them.

## FIRST CAUSE OF ACTION

### (Negligence)

### Against All Defendants

38.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

39.    Defendant Tristar and DOES 1 – 50 had a legal duty to the public, and specifically, to the Plaintiffs, to use reasonable care in developing, designing, testing, selling, and/or marketing its products, such as the Pressure Cooker, free from defects in material or workmanship that were safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers like Plaintiffs.

40.    Defendants also owed a duty to Plaintiffs to adequately warn of the dangers inherent in the use of the product it developed, designed, tested, sold, and/or marketed, including the Pressure Cooker.

41.    At all times material hereto, the cooker was being used by Plaintiffs for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiffs were foreseeable intended users of the Pressure Cooker.

42.    Defendants breached their duty of care to the public and Plaintiffs when they failed to exercise such reasonable care and failed to warn consumers of the dangers inherent in its product.

43.    Defendants further breached their duty of care to the public and the Plaintiffs by, among other things:

   a.    Failing to take appropriate steps to ensure the Pressure Cooker could not and would not explode;

   b.    Failing to conduct an appropriate inspection and testing of the Pressure Cooker;

10

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

c.  Marketing, selling, and shipping the Pressure Cooker in an unsafe condition;

d.  Failing to provide users of the Pressure Cooker with adequate instructions for its safe operation and use;

e.  Failing to provide users of the Pressure Cooker with adequate warnings concerning its operation and use;

f.  Failing to thoroughly and adequately test the Pressure Cooker to ensure that the lid could not be discharged from the unit if pressure remained in the unit;

g.  Failing to equip the Pressure Cooker with properly functioning safety features which would prevent the lid from opening while contents were under pressure;

h.  Failing to equip the Pressure Cooker with properly functioning safety features which would prevent the unit from operating if there was some other internal malfunction;

i.  Failing to prevent damage to, or sticking, or malfunction of, the Pressure Cooker's safety features, including the "Built-In Safety Features" noted in the Pressure Cooker's manual;

j.  Failing to provide a safe, appropriate, and effective mechanism for alerting customers that pressure remains in the Pressure Cooker even after all sign of depressurization are observed and the steam and/or sounds are no longer emitting from the product;

k.  Failing to design the Pressure Cooker with a warning mechanism that would allow a user to recognize that there was some internal malfunction;

l.  Failing to discover defects in, and the dangerous condition of, the Pressure Cooker;

m.  Failing to remedy the defects in, and the dangerous condition of, the Pressure Cooker;

n.  Failing to discover defects in, and dangerous inadequacies of, the instructions and

11

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

warnings provided with the Pressure Cooker;

o.  Failing to properly test, evaluate, inspect, and assemble the Pressure Cooker;

p.  Failing to properly design, test, and advertise the Pressure Cooker to ensure that it was not unreasonably dangerous;

q.  Failing to warn the public in general, and Plaintiffs in particular, of the dangers presented by the use of Defendant's product;

r.  Failing to use due care in designing and manufacturing the Pressure Cookers to avoid the aforementioned risks to individuals;

s.  Placing an unsafe product into the stream of commerce;

t.  Aggressively and falsely over-promoted and marketed its Pressure Cookers through television, social media, and other advertising outlets;

u.  Failing to exercise due care and act with regard for the safety of those using its products; and

v.  Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

45.    Defendants were negligent in developing, designing, testing, selling, and/or marketing the Pressure Cooker. No act or omission on the part of Plaintiffs caused or contributed to the occurrence of this incident.

46.    Despite the fact that Defendants knew or should have known that the Plaintiffs and consumers like them were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market the Pressure Cooker to the general public (and continue to do so) as a product that is safe for its intended use, knowing this is false.

47.    As a direct and proximate result of the inattention, carelessness, and negligence of Defendants, and each of them, Plaintiffs have been severely harmed and suffered permanent injuries to their health, strength, and activity, sustaining severe and permanent burn injuries to their bodies, and having suffered, and continuing to suffer, great mental, physical, and emotional pain and

12

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

suffering, all entitling Plaintiffs to general damages in an amount according to proof.

48.    As a further direct and proximate result of the negligence of Defendants, and each of them, Plaintiffs have incurred, and will continue to incur in the future, medical and related expenses, and have suffered and will in the future continue to suffer loss of earnings and earning capacity, in an amount that is currently unknown but will be proven at trial.

49.    The negligence of said Defendants, and each of them, was a substantial factor in causing Plaintiffs' harm, and Defendants, and each of them, are liable to Plaintiffs for damages in an amount according to proof at trial.

50.    Plaintiffs' injuries and damages are the direct and proximate result of the Defendants' negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority.

## SECOND CAUSE OF ACTION

### (Strict Products Liability)

### Against Defendant Tristar and DOES 1 - 25

51.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

52.    Defendant Tristar and DOES 1-25, and each of them, were in the business of designing, manufacturing, producing, supplying, distributing, processing, testing, inspecting, analyzing, recommending, merchandising, advertising, promoting, maintaining, selling, packaging, and/or providing the Pressure Cooker to members of the public, including the Plaintiffs.

53.    At the time of Plaintiffs' injuries, the Pressure Cooker was defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiffs.

54.    The Pressure Cooker was in the same or substantially similar condition as when it left the possession of Defendants.

55.    The Pressure Cooker was used by Plaintiffs as designed and intended by the Defendants, without any material change to its condition.

13

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

56.    The Pressure Cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

57.    The Pressure Cooker, which was sold and delivered to Plaintiffs by Defendant and ultimately used by Plaintiffs, was, at the time of sale and delivery, in a defective condition and unreasonably dangerous to the ultimate user.

58.    The Pressure Cooker was defective and unreasonably dangerous in that it failed to conform to the product design and specifications of other pressure cookers, and including as prescribed by Defendants, where it failed to prevent the sudden and unexpected ejection of the lid and the boiling hot contents inside the unit when used in accordance with the instructions provided. Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

59.    The Pressure Cooker was defective and unreasonably dangerous because there was a lack of adequate warnings and notices that the product could inadvertently eject its lid and boiling hot liquids in a way not warned of or contemplated by the ordinary user of the product. Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

60.    The Pressure Cooker was defective and unreasonably dangerous due to the hazard created by the ability of the lid to come off after all signs of depressurization had indicated that pressure no longer remained in the unit, but while its contents were under pressure. Such defect(s) constituted a producing cause of Plaintiffs' injuries and damages.

61.    Defendants, and each of them, knew or should have known of these defects related to the Pressure Cooker in that prior claims, demands and lawsuits have been asserted against Defendants alleging similar, and the same, defects as alleged herein and as further noted above.

62.    Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Pressure Cooker safe. Specifically:

    a.    The Pressure Cookers designed, manufactured, sold, and supplied by Defendant Tristar were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

14

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendants failed to warn and place adequate warnings and instructions on the Pressure Cooker;

e. Defendants failed to adequately test the Pressure Cooker; and

f. Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

63. As a direct and proximate result of the defective condition of the Pressure Cooker, Plaintiffs sustained the serious injuries and damages described herein. Had the Pressure Cooker not been designed, distributed, or sold by Defendants in such an unreasonably dangerous condition, Plaintiffs' injuries would not have occurred.

64. Plaintiffs have been severely harmed and suffered permanent injuries in their health, strength, and activity, including permanent burn injuries to their bodies, and have suffered, and will continue to suffer, great mental, physical, and emotional pain and suffering, all entitling Plaintiffs to general damages in an amount according to proof.

65. As a further direct and proximate result of Defendants', and each of them, dangerous and defective products as described herein, Plaintiff have incurred, and will continue to incur in the future, medical and related expenses, and have suffered and will in the future continue to suffer loss of earnings and earning capacity, in an amount that is currently unknown but will be proven at trial.

66. The dangerous conditions and/or defects of said Defendants' product were a substantial factor in causing Plaintiffs' harm, and said Defendants, and each of them, are liable to Plaintiffs for damages in an amount according to proof at trial.

15

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

67. Defendants' conduct, as described above, was extreme and outrageous. Defendants knowingly risked the safety and well-being of its consumers and users of its pressure cookers, including the Pressure Cooker used by Plaintiffs in this case, with the knowledge of the safety defects and efficacy problems and suppressed this knowledge from the public, interested only in making a profit. Defendants acted in conscious disregard for the safety of others in their decisions not to redesign, warn or inform the unsuspecting consuming public when they were fully informed of the dangerous inherent in the product's design and known to Defendants by other lawsuits, claims and injuries suffered by the public. Defendants' outrageous conduct thus warrants an award of punitive damages.

**THIRD CAUSE OF ACTION**

**(Strict Liability – Design Defect)**

**Against Defendant Tristar and DOES 1 - 25**

68. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

69. Defendant Tristar and DOES 1-25 are the manufacturer, seller, distributor, marketer, and supplier of the Pressure Cooker which was defectively and negligently designed.

70. Defendants failed to exercise reasonable care in designing, developing, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting its pressure cookers, which were defective and presented an unreasonable risk of harm to consumers, such as the Plaintiffs.

71. As a result, Defendants' the Pressure Cooker contained defects in its design which rendered it unreasonably dangerous to consumers, such as the Plaintiffs, when used as intended or as reasonably foreseeable to Defendants. The defect in the design allowed consumers such as Plaintiffs to open the lid while the unit remains pressurized, despite the appearance that all the pressure has been released from the unit, and caused an unreasonable increased risk of injury, including, but not limited to, first, second and third-degree scald burns.

16

72.    Plaintiffs used the Pressure Cooker in a reasonably foreseeable manner and did so as substantially intended by Defendants.

73.    The Pressure Cooker was not materially altered or modified after being manufactured by Defendants and before being used by Plaintiffs.

74.    The design defects allowing the lid to open while the unit was still pressurized directly rendered the Pressure Cooker defective and was the direct and proximate result of Defendants' negligence and failure to use reasonable care in designing, testing, manufacturing, and promoting the pressure cookers, including the Pressure Cooker used by Plaintiffs.

75.    As a direct and proximate result of Defendants' negligent design of its pressure cookers, including the Pressure Cooker used by Plaintiffs, the Plaintiff in this case suffered injuries and damages described herein.

76.    Despite the fact that Defendants knew or should have known that the Plaintiffs and consumers like them were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market the Pressure Cooker to the general public (and continue to do so) as a product that is safe for its intended use, knowing this is false.

77.    Defendants' conduct, as described above, was extreme and outrageous. Defendants knowingly risked the safety and well-being of its consumers and users of its pressure cookers, including the Pressure Cooker used by Plaintiffs in this case, with the knowledge of the safety defects and efficacy problems and suppressed this knowledge from the public, interested only in making a profit. Defendants acted in conscious disregard for the safety of others in their decisions not to redesign, warn or inform the unsuspecting consuming public when they were fully informed of the dangerous inherent in the product's design and known to Defendants by other lawsuits, claims and injuries suffered by the public. Defendants' outrageous conduct thus warrants an award of punitive damages.

///

///

17

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### (Strict Liability – Failure to Warn)

### Against Defendant Tristar and DOES 1 - 25

78.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

79.    At the time in which the Pressure Cooker was purchased, up through the time Plaintiffs were injured, Defendants knew or had reason to know that its pressure cookers were dangerous and created an unreasonable risk of harm to consumers.

80.    Defendants had a duty to exercise reasonable care to warn consumers of the dangerous conditions or the facts that made its Pressure Cookers likely to be dangerous.

81.    As a direct and proximate result of Defendants' failure to warn of the dangers of its Pressure Cookers, the Plaintiffs in this case suffered injuries and damages described herein.

82.    Despite the fact that Defendants knew or should have known that the Plaintiffs and consumers like them were able to remove the lid while the pressure cookers were still pressurized, Defendants continued to market the Pressure Cooker to the general public (and continue to do so) as a product that is safe for its intended use, knowing this is false.

83.    Defendants' conduct, as described above, was extreme and outrageous. Defendants knowingly risked the safety and well-being of its consumers and users of its pressure cookers, including the Pressure Cooker used by Plaintiffs in this case, with the knowledge of the safety defects and efficacy problems and suppressed this knowledge from the public, interested only in making a profit. Defendants acted in conscious disregard for the safety of others in their decisions not to redesign, warn or inform the unsuspecting consuming public when they were fully informed of the dangerous inherent in the product's design and known to Defendants by other lawsuits, claims and injuries suffered by the public. Defendants' outrageous conduct thus warrants an award of punitive damages.

///

18

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty)

### Against Defendant Tristar and DOES 1-25

84.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

85.    Defendant Tristar and DOES 1-25, and each of them, were in the business of designing, manufacturing, producing, supplying, distributing, processing, testing, inspecting, analyzing, recommending, merchandising, advertising, promoting, maintaining, selling, packaging, and/or providing the Pressure Cooker to members of the public, including the Plaintiffs.

86.    Defendants expressly warranted that its products, including the Pressure Cooker, were safe for ordinary use when used in compliance with the instructions provided, as well as the express warranties provided with the product as fully set forth above.

87.    Defendants' affirmations regarding the safety of its products, including the Pressure Cooker, formed a basis of the bargain for Plaintiff Torres, without which the Plaintiff Torres would not have purchased Defendants' product.

88.    The product did not conform to the Defendants' affirmations regarding its safety, operation and use.

89.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs sustained the severe injuries and damages described herein.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

### Against Defendant Tristar and DOES 1-25

90.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

91.    Defendant Tristar and DOES 1-25, and each of them, were in the business of designing, manufacturing, producing, supplying, distributing, processing, testing, inspecting,

19

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

analyzing, recommending, merchandising, advertising, promoting, maintaining, selling, packaging, and/or providing the Pressure Cooker to members of the public, including the Plaintiffs.

92. Defendants sold and shipped the Pressure Cooker to Plaintiffs Torres.

93. Defendants impliedly warranted that its product, including the Pressure Cooker, was merchantable, fit for the ordinary purpose for which it was sold or used, was of fair average quality so as to pass without objection in the trade, and conformed to Defendants' own affirmations regarding the Pressure Cooker's safety features and overall safe condition.

94. Defendants breached their implied warranty of merchantability, as the Pressure Cooker did not conform to the Defendants' affirmations regarding the safety features and overall safe condition of the product, the product was not fit for the ordinary purpose for which it was sold or used and was not of fair average quality so as to pass without objection in the trade.

95. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs sustained the severe injuries and damages described herein.

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranty of Fitness for a Particular Use)**

**Against Defendant Tristar and DOES 1-25**

96. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

97. Defendant Tristar and DOES 1-25, and each of them, were in the business of designing, manufacturing, producing, supplying, distributing, processing, testing, inspecting, analyzing, recommending, merchandising, advertising, promoting, maintaining, selling, packaging, and/or providing the Pressure Cooker to members of the public, including the Plaintiffs.

98. In selling its product to Plaintiffs, Defendant, through its agents, servants, employees, and apparent agents acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiffs would put the product to use and knew or should have known of the particular purpose to which Plaintiffs

20

would put the product to use. Defendants impliedly warranted that the Pressure Cooker would be fit for such particular purpose.

99.    Defendants breached their implied warranty of fitness for a particular purpose, as the product did not conform to the Defendants' affirmations regarding its product being fit for such particular purpose. The Pressure Cooker's malfunctioning safety features and overall unsafe condition rendered it unfit for that purpose.

100.    As a direct and proximate result of Defendant's breach of the implied warranty of fitness for a particular purpose, Plaintiffs sustained the injuries and losses described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment on all causes of action against Defendants, and each of them, as follows:

1.    For an award of actual and compensatory damages in an amount to be proven at the time of trial;

2.    For an award of general damages in an amount to be proven at the time of trial;

3.    For an award of special damages, including but not limited to, Plaintiffs' past and future hospital, medical, professional, and incidental expenses, in an amount to be proven at trial;

4.    For exemplary and punitive damages on all applicable causes of action permitted by law and noted above;

5.    For an award of Plaintiffs' loss of earnings and loss of earning capacity, past and future, according to proof;

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the Court may deem just and proper.

Dated: July 12, 2024                      KL LAW FIRM P.C.

Kathy Lerner, Esq.
Attorneys for Plaintiffs, VIRGINIA MARIE TORRES
and KRISTEN IRENE KUHN

21

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable in this Complaint.

Dated: July 12, 2024

KL LAW FIRM P.C.

Kathy Lerner, Esq.
Attorneys for Plaintiffs, VIRGINIA MARIE TORRES
and KRISTEN IRENE KUHN

22

PLAINTIFF'S UNLIMITED COMPLAINT FOR DAMAGES

Electronically FILED by Superior Court of California, County of Riverside on 07/12/2024 07:36 PM
Case Number CVRI2404044 0000098767661 - Jason B. Galkin, Executive Officer/Clerk of the Court By Joseline DeRosier, Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kathy Lerner, Esq. (SBN 285131)<br>16501 Ventura Blvd., Suite 400, Encino CA 91436<br><br>TELEPHONE NO.: (818) 650-2606    FAX NO.: (818) 626-5503<br>EMAIL ADDRESS: Kathy@kllawfirmpc.com<br>ATTORNEY FOR *(Name):* Plaintiffs, VIRGINIA MARIE TORRES and KRISTEN IRENE KUHN | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
STREET ADDRESS: 4050 Main St
MAILING ADDRESS: 4050 Main St
CITY AND ZIP CODE: Riverside, CA 92501
BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
VIRGINIA MARIE TORRES et al. v. TRISTAR PRODUCTS, INC. et al.

| CIVIL CASE COVER SHEET<br>[x] Unlimited   [ ] Limited<br>(Amount demanded exceeds $35,000)   (Amount demanded is $35,000 or less) | Complex Case Designation<br>[ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CVRI2404044<br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [x] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive

4. Number of causes of action *(specify):* 7: Negligence; strict products liability; breach of express warranty; breach of implied warranty

5. This case [ ] is  [x] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 12, 2024

Kathy Lerner, Esq.

_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

RI-ADR001-INFO



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
www.riverside.courts.ca.gov

**Self-represented parties:** https://www.riverside.courts.ca.gov/SelfHelp/self-help.php

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR) – *INFORMATION PACKAGE*

### *** THE PLAINTIFF MUST SERVE THIS INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT. ***

---

## What is ADR?

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. The main types are mediation, arbitration, and settlement conferences.

## Advantages of ADR:

- Faster:  ADR can be done in a 1-day session within months after filing the complaint.
- Less expensive:  Parties can save court costs and attorneys' and witness fees.
- More control:  Parties choose their ADR process and provider.
- Less stressful:  ADR is done informally in private offices, not public courtrooms.

## Disadvantages of ADR:

- No public trial:  Parties do not get a decision by a judge or jury.
- Costs:  Parties may have to pay for both ADR and litigation.

## Main Types of ADR:

**Mediation:**    In mediation, the mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to create a settlement agreement that is acceptable to everyone.  If the parties do not wish to settle the case, they go to trial.

Mediation may be appropriate when the parties:
- want to work out a solution but need help from a neutral person; or
- have communication problems or strong emotions that interfere with resolution; or
- have a continuing business or personal relationship.

Mediation is not appropriate when the parties:
- want their public "day in court" or a judicial determination on points of law or fact;
- lack equal bargaining power or have a history of physical/emotional abuse.

**Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration the arbitrator's decision is final; there is no right to trial.  In "non-binding" arbitration, any party can request a trial after the arbitrator's decision.  The court's mandatory Judicial Arbitration program is non-binding.

**Page 1 of 2**

Arbitration may be appropriate when the parties:

- want to avoid trial, but still want a neutral person to decide the outcome of the case.

Arbitration is not appropriate when the parties:

- do not want to risk going through both arbitration and trial (Judicial Arbitration)
- do not want to give up their right to trial (binding arbitration)

**Settlement Conferences:**  Settlement conferences are similar to mediation, but the settlement officer usually tries to negotiate an agreement by giving strong opinions about the strengths and weaknesses of the case, its monetary value, and the probable outcome at trial.  Settlement conferences often involve attorneys more than the parties and often take place close to the trial date.

## RIVERSIDE COUNTY SUPERIOR COURT ADR REQUIREMENTS

ADR Information and forms are posted on the ADR website:
https://www.riverside.courts.ca.gov/Divisions/ADR/ADR.php

### General Policy:

Parties in most general civil cases are expected to participate in an ADR process before requesting a trial date and to participate in a settlement conference before trial.  (Local Rule 3200)

### Court-Ordered ADR:

Certain cases valued at under $50,000 may be ordered to judicial arbitration or mediation. This order is usually made at the Case Management Conference. See the "Court-Ordered Mediation Information Sheet" on the ADR website for more information.

### Private ADR (for cases not ordered to arbitration or mediation):

Parties schedule and pay for their ADR process without Court involvement.  Parties may schedule private ADR at any time; there is no need to wait until the Case Management Conference. See the "Private Mediation Information Sheet" on the ADR website for more information.

### BEFORE THE CASE MANAGEMENT CONFERENCE (CMC), ALL PARTIES MUST:

1. Discuss ADR with all parties at least 30 days before the CMC.  Discuss:
   - Your preferences for mediation or arbitration.
   - Your schedule for discovery (getting the information you need) to make good decisions about settling the case at mediation or presenting your case at an arbitration.
2. File the attached "Stipulation for ADR" along with the Case Management Statement, if all parties can agree.
3. Be prepared to tell the judge your preference for mediation or arbitration and the date when you could complete it.

(Local Rule 3218)

### RIVERSIDE COUNTY ADR PROVIDERS INCLUDE:

- The Court's Civil Mediation Panel (available for both Court-Ordered Mediation and Private Mediation). See https://adr.riverside.courts.ca.gov/Home/CivilMedPanel or ask for the list in the civil clerk's office, attorney window.
- Riverside County ADR providers funded by DRPA (Dispute Resolution Program Act):
  Dispute Resolution Service (DRS) Riverside County Bar Association:  (951) 682-1015
  Dispute Resolution Center, Community Action Partnership (CAP):  (951) 955-4900
  Chapman University School of Law Mediation Clinic (services only available at the court)

**Page 2 of 2**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225
☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882
☐ **MORENO VALLEY** 13800 Heacock St. #D201, Moreno Valley, CA 92553

☐ **MURRIETA** 30755-D Auld Rd., Murrieta, CA 92563
☐ **PALM SPRINGS** 3255 Tahquitz Canyon Way, Palm Springs, CA 92262
☐ **RIVERSIDE** 4050 Main St., Riverside, CA 92501

**RI-ADR001**

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar Number and Address*)

FOR COURT USE ONLY

TELEPHONE NO:                        FAX NO. (*Optional*):

E-MAIL ADDRESS (*Optional*):

ATTORNEY FOR (*Name*):

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

CASE NUMBER:

CASE MANAGEMENT CONFERENCE DATE(S):

**STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)**
(CRC 3.2221; Local Rule, Title 3, Division 2)

**Court-Ordered ADR:**

Eligibility for Court-Ordered Mediation or Judicial Arbitration will be determined at the Case Management Conference. If eligible, the parties agree to participate in:

☐ Mediation            ☐ Judicial Arbitration (non-binding)

**Private ADR:**

If the case is not eligible for Court-Ordered Mediation or Judicial Arbitration, the parties agree to participate in the following ADR process, which they will arrange and pay for without court involvement:

☐ Mediation            ☐ Judicial Arbitration (non-binding)

☐ Binding Arbitration    ☐ Other (describe): _____

Proposed date to complete ADR: _____

**SUBMIT THIS FORM ALONG WITH THE CASE MANAGEMENT STATEMENT.**

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

_____
(PRINT NAME OF PARTY OR ATTORNEY)
☐ Plaintiff  ☐ Defendant

_____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(DATE)

**Page 1 of 1**

Adopted for Mandatory Use
Riverside Superior Court
Form RI-ADR001 [Rev. 01/01/12]
[Reformatted 06/01/16]

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Statutory Authority
riverside.courts.ca.gov/localfrms/localfrms.shtml